UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SILVER RIDGE HOMEOWNERS'
ASSOCIATION, INC., an Oregon nonprofit
corporation,

        Plaintiff,

   v.

STATE FARM FIRE AND CASUALTY
COMPANY, an Illinois company,

        Defendant.

Case No. 3:19-cv-01218-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Silver Ridge Homeowners' Association, Inc. has filed an action against defendant State Farm Fire and Casualty Company for breach of contract. Compl., ECF #1-1. Defendant has moved for summary judgment. ECF #9. For the reasons set forth below, defendant's motion for summary judgment is DENIED.[1]

**1.   Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

1 – OPINION AND ORDER

entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 342 (citing FED. R. CIV. P. 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id.* A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Cason City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu*, 198 F.3d at 1134.

## II.  Background

Plaintiff is a non-profit corporation that maintains a townhome development in Portland, Oregon. Stip. Facts ¶ 1, ECF #11. From 1993 through 2009, defendant issued plaintiff Condominium/Association Insurance Policies for the townhome development. *Id.* ¶ 3; Report 1,

ECF #15.  On August 19, 2009, plaintiff canceled coverage under these policies and has not renewed with defendant since that date.  Stip Facts ¶ 3, ECF #11.

In February 2018, plaintiff retained Bryan Costa, a Senior Building Science Consultant and Engineer, to perform "investigative openings" at the townhome development.  Costa Decl. ¶¶ 2-3, ECF #12-4.  During this investigation, Costa discovered "systemic property damage." *Id.* ¶ 4.  In Costa's professional opinion, "the hidden damage was not reasonably discoverable by [plaintiff] or its agents until [he] performed the investigative openings." *Id.*  Based on his analysis and experience, Costa opines that the losses from the hidden damage commenced during defendant's policy period—1993 to 2009—and continued until he discovered the property damage in 2018.  *Id.* at ¶ 5.

In April 2018, "counsel for plaintiff contacted defendant and reported that plaintiff had discovered 'property damage' at its townhome development and asserted that the policies issued by defendant 'may provide coverage' for that alleged damage."  Stip. Facts ¶ 4, ECF #11.  Defendant denied coverage to plaintiff's claim in May 2019.  *Id.* ¶ 5.

On May 29, 2019, plaintiff filed suit against defendant for breach of contract in Multnomah County Circuit Court, and defendant removed the case to this court on August 6, 2019.  Compl. 3-4, ECF #1-1; Notice of Removal 3, ECF #1.

**III.    Discussion**

Defendant contends that plaintiff's lawsuit is untimely based on the suit-limitation provision found within the policies.  Mot. Summ. J. 2, ECF #10.  The suit-limitation provision states, in relevant part, that an action must be "brought within two years after the date on which the accidental direct physical loss occurred."  Stip. Facts 4, ECF #11.  The parties disagree on how the term "occurred" should be interpreted.

3 – OPINION AND ORDER

Defendant asserts that "occurred" refers to the moment the damage initially commences and argues the policy's coverage extends only to those losses that "occurred when the policies were in force, which was 2009 or before." Mot. Summ. J. 2, ECF #10.  If defendant's interpretation is adopted, plaintiff failed to bring suit within two years of when the loss "occurred" because plaintiff "did not file suit until May 29, 2019, about 10 years after the last covered loss could have occurred." *Id.*

Plaintiff contends that a loss has "occurred" when the "loss ends or is discovered." Resp. 9, ECF #12.  Under plaintiff's interpretation, the suit-limitation period was not triggered until plaintiff discovered the hidden property damage in February 2018, and it timely brought suit within the two-year limitation.  *Id.*  Alternatively, plaintiff argues that the term "occurred" is ambiguous and must be construed against the drafter.  *Id.* at 3-4.

### A.     Relevant Law Regarding Interpretation of Insurance Policy

A federal court, sitting in diversity, applies state law in interpreting an insurance policy. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008). Under Oregon law, interpretation of an insurance policy is a question of law.  *Cain Petroleum Inc. v. Zurich Am. Ins. Co.*, 224 Or. App. 235, 241 (2008).

"The task in determining the meaning of a policy is to ascertain the intent of the parties, based on the wording of the policy itself. *Id.* (citing *Totten v. New York Life Ins. Co.*, 298 Or. 765 (1985), and *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or. 303, 307 (1999)).  "Issues of contractual intent are determined by the objective manifestations of the parties based on the terms that they use and not on what they subjectively believe that the terms mean." *Employers Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 503 (2009).

In determining the parties' intent under Oregon law, the court follows the analytical framework set out in *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 470-71 (1992). The *Hoffman* framework first requires the court to determine whether the insurance policy defines the provision, term, or phrase at issue. If expressly defined, the court must apply the provided definition. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 650 (2006) (citing *Groshong*, 329 Or. at 307-08).

When a policy does not define the phrase, the court must look to its plain meaning; a phrase has a plain meaning if it is susceptible to only one plausible interpretation. *Id.*; *Clinical Research Inst. of S. Oregon, P.C. v. Kemper Ins. Cos.*, 191 Or. App. 595, 600 (2004) (citing *American Hardware Ins. Group*, 167 Or. App. 244, 248 (2000)). If the court determines that there are two or more plausible interpretations of the phrase, the court must determine whether the interpretations "withstand scrutiny." *Holloway*, 341 Or. at 650 (citing *Hoffman*, 313 Or. at 470). A phrase withstands scrutiny if it continues to be reasonable after the interpretations are examined in light of, inter alia, the particular context in which the phrase is used in the policy and the broader context of the policy as a whole. *Id.; see also Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 122 (2012) ("[the court must] construe the text of the policy as a whole, rather than view particular parts of the policy in isolation.").

If a single interpretation withstands scrutiny, the court must apply that interpretation. *Hoffman*, 313 Or. at 472. Where more than one interpretation withstands scrutiny, the court must conclude that the phrase is ambiguous. *Cain Petroleum Inc.*, 244 Or. App. at 241 (explaining that "'ambiguity' is a term of art . . . referring to multiple, reasonable interpretations of the policy"). If the court concludes that a term or phrase is ambiguous under this framework,

5 – OPINION AND ORDER

"the ambiguity cannot be permitted to survive" and the phrase must be construed against the drafter. *Hoffman*, 313 Or. at 470.

### B. Plain Meaning

The policies do not define the term "occurred." Thus, the court must apply the plain meaning of the term.

The word "occur" has multiple meanings within the English language. One definition for "occur" is "to present itself. Of a person or thing: to be met with or found, to turn up or appear." *Occur*, Oxford English Dictionary, http://www.oed.comview/Entry/130192?redirectedFrom=occur (last visited Oct. 5, 2020). Based on that definition, one could reasonably argue that the damage "presented itself," was "met with or found," or "turned up or appeared" when it was discovered in 2018. Thus, the term "occurred" is susceptible to plaintiff's interpretation that the suit-limitation period is not triggered until after a loss ends or is discovered. *See Housing Nw. Inc. v. American Ins. Co.*, No. 3:19-cv-00253-SB, 2019 WL 7040922, at *3 (D. Or. Dec. 20, 2019) (interpreting a nearly identical suit-limitation provision and finding that "it is reasonable to interpret 'occurred' to mean 'to present itself,' to 'appear,' or to 'exist,' so that the limitations period is not triggered until after the loss or damage presents itself or appears or ceases to exist"); *Strauss v. Chubb Indem. Ins. Co.*, 771 F.3d 1026, 1035 (7th Cir. 2014) (holding that a suit-limitation provision mandating that claims be filed "within one year after a loss occurs" was "fundamentally different" from a provision that mandated claims be filed "after the inception of the loss" and therefore "can entirely reasonably be interpreted to mean after a loss completes"); *see also Sunwood Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, No. C16-1012-JCC, 2017 WL 5499809 at *6 (W.D. Wash. Nov. 16, 2017) (holding that "[a] suit limitation clause that hinges

on when a loss 'occurs' begins to run when hidden damage is 'concluded or exposed,' not upon termination of an insurance policy") (citation omitted).

Nonetheless, defendant's interpretation of "occurred" is also plausible. Another definition for "occur" is: "of an event, incident, etc.: to happen, come about, take place, esp[ecially] without being arranged or expected." *Occur*, Oxford English Dictionary, http://www.oed.com/view/Entry/130192?redirectedFrom=occur (last visited Oct. 5, 2020). Applying this definition, the term "loss occurred" can reasonably be interpreted, as defendant argues, to be the moment that the damage initially commenced. *See Great Am. Ins. Co. v. Or. Landmark*, No. 10-3147-TC, 2011 WL 2414379, at *2 (D. Or. Apr. 6, 2011) (interpreting a nearly identical suit-limitation provision and finding that the initial "loss date" was the only reasonable interpretation for the term "occurred").

### C. Particular Context Within the Policy and Policy Viewed as a Whole

The court next views the context in which the term appears in the policy, as well as the policy as a whole, to determine whether both parties' interpretations remain plausible or instead reveals that only one interpretation withstands scrutiny, "i.e., continues to be reasonable." *Hoffman Constr.*, 313 Or. at 470.

Here, the context in which the term appears provides no further help in resolving the ambiguity. That is, no language surrounding the provision further informs the parties' intentions. Additionally, examining how the term "occurred" is used throughout the policies does little to support one party's interpretation over the other. The term "occurred" appears multiple times throughout the policies. For example, under a provision titled "Duties in the Event of Loss," the policy states "as soon as possible, give us a description of how, when and where the loss occurred." Report 15, ECF #15. Certainly, the prompt notice requirement could be reasonably

7 – OPINION AND ORDER

understood to reflect defendant's interpretation of "occurred"; however, "as soon as possible" reasonably reflects plaintiff's interpretation that a loss "occurred" when it is discovered. *See Housing Nw. Inc.*, 2019 WL 7040922, at *3 (finding that an identical policy insurance provision did not favor either parties' interpretation of "occurred"). In each instance where "occurred" appears throughout the policies, either parties' interpretation can be read into those provisions and remains reasonable within the context of the policies as a whole. Thus, viewing the broader context of the policies as a whole does not resolve the ambiguity. *See Hunters Ridge Condo. Ass'n v. Sherwood Cross, LLC*, 285 Or. App. 416, 427 (2017) (concluding that both parties' interpretations remained plausible when viewed in light of the broader context of the insurance policy).

### D.     Unresolved Ambiguity Construed Against the Drafter

Where, as here, two plausible, competing interpretations are reasonable, then the ambiguity must be construed against the drafter. *Hoffman*, 313 Or. at 470-71; *N. Pacific Ins. Co. v. Hamilton*, 332 Or. 20, 26 (2001) ("[I]f the court cannot clarify the obscurity by undertaking the analytical steps set out in *Hoffman*, then the court will construe the provisions against the drafter."); *Schutt v. Farmers Ins. Group of Companies*, 129 Or. App. 401, 407 (1994) ("[W]e have been unable to find[] any portion of the policy that persuades us that one interpretation should be preferred to the other. In the light of the unresolved ambiguity, the policy must be construed against [the drafter]."). Thus, the suit-limitation provision must be construed against defendant and in favor of coverage. *See Housing Nw. Inc.*, 2019 WL 7040922, at *4 (construing the policy against the insurer after finding that "occurred" remained ambiguous upon completion of the *Hoffman Construction* analysis); *Bighorn Logging Corp. v. Truck Ins. Exch.*, 295 Or. App. 819, 827 (2019) (finding that commercial general liability insurance policy exclusion was

ambiguous and construing in favor of the insured); *Hunters Ridge Condo. Ass'n*, 285 Or. App. at 427 (holding that the term at issue must be construed against the drafter and in favor of coverage "[b]ecause it remains ambiguous whether a mixed-use building qualifies as a 'Multi-Unit Residential Building' under the policy").

### E.    O.R.S. 742.240

Defendant argues that the suit-limitations provision was included in the policies pursuant to O.R.S. 742.240, and because the discovery rule does not apply to that statute, it does not apply here.  Mot. Summ. J. 4, ECF #10.

O.R.S. 742.240 provides:

> A fire insurance policy shall contain a provision as follows: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 24 months next after *inception of the loss*."

(emphasis added).  Although O.R.S. 742.240 specifically addresses fire insurance policies, Oregon courts have applied the provision generally to property insurance policies.  *See*, *e.g.*, *Hatley v. Truck Ins. Exch.*, 261 Or. 606, 609-10 (1972) (applying previous version of statute to insured's property insurance claim for water damage); *Herman v. Valley Ins. Co.*, 145 Or. App. 124, 126-27 (1996) (applying the statute to the insured's homeowner policy for property loss due to a burglary).

Under this statute, the term "inception of the loss" means "the occurrence of the event giving rise to the claim of liability."  *Bell v. Quaker City Fire & Marine Ins. Co., Philadelphia*, 230 Or. 615, 623 (1962) (citing *Margulies v. Quaker City Fire & Marine Ins. Co.*, 97 N.Y.S.2d 100, 104 (N.Y. App. Div. 1st Dept. 1950)).  And, indeed, in *Moore v. Mutual of Enumclaw Ins. Co.*, the Oregon Supreme Court examined the legislative intent behind O.R.S. 742.240, and

9 – OPINION AND ORDER

determined that the legislature did not intend for the discovery rule to apply. 317 Or. 235, 250 (1993).

However, *Moore* is distinguishable because the insurance policy in that case mirrored O.R.S. 742.240 by containing the language "inception of the loss." The suit-limitation provision in this case does not contain that language. Thus, the reasoning in *Moore* is inapplicable.

Defendant also argues pursuant to *Olson v. National Indem. Co.*, 112 Or. App. 359 (1992), that Oregon law requires suit-limitation provisions to be construed consistently with O.R.S. 742.240, even where they fail to adopt the statute's exact language. Reply 2-3, ECF #13. In *Olson*, the plaintiff claimed that the suit-limitation provision in his policy was invalid because O.R.S. 742.240 "requires insurance policies to duplicate [the statute's] exact language" and the insurer had failed to do so. *Id.* As such, the plaintiff argued that a limitations period from a different statute applied. *Id.* The Oregon Court of Appeals disagreed, holding that if a policy does not comply with O.R.S. 742.240, then the policy must be construed to "contain any mandatory statutory requirements that it omits." *Id.* The purpose of O.R.S. 742.240 "is not to set the maximum time in which a lawsuit may be filed" but instead establishes a contractual limitation that "cannot be reduced further by contract." *Ben Rykbe Co. v. Royal Globe Ins. Co.*, 293 Or. 513, 518 (1982) (analyzing O.R.S. 743.660, which has since been renumbered to O.R.S. 742.240). The "effect of [the statute] is not to displace the statute of limitations, but only to take from insurers the power to contractually impose a shorter limitation." *Id*.

Here, plaintiff does not argue that the suit-limitation provision is invalid. Instead, plaintiff argues that the use of the term "loss occurred" in the policies is broader than "inception of the loss." Resp. 7, ECF #12. Otherwise stated, the issue is not whether the provision is

10 – OPINION AND ORDER

invalid but whether the parties intended to contract for broader protections than those required by O.R.S. 742.240. Consequently, *Olson* is not controlling.

**ORDER**

For the reasons stated above, defendant's motion for summary judgment (ECF #9) is DENIED.

IT IS SO ORDERED.

DATED  October 5, 2020.

                                                              /s/ Youlee Yim You
                                                           Youlee Yim You
                                                           United States Magistrate Judge